In the Matter of the Accounting of ANNA M. C. WILKIN, as
   Trustee under the Will of JAMES CUNNINGHAM, Deceased,
   Appellant.

CHARLES E. CUNNINGHAM, Appellant; MARY E. CUNNINGHAM
              et al., Respondents.

1. WILL — TRUST OF PERSONAL PROPERTY — DISCRETION OF TRUSTEE.
A bequest of a specified sum of money to an executor "to be by him
invested and to be paid, togetherwith the increase thereof," to a son of the
testator, "or to his wife or children, at such times, in such sums and in
such manner as such executor may deem best for the interest" of such
son, creates a valid trust of personal property, covering both principal
and interest of the fund, and authorizes the executor, in the exercise of
his sound discretion, in good faith, to pay over the whole or any part of
the principal of the fund to the testator's son, or his wife or children, at
such times, in such sums and in such manner as such executor may deem
best for the interest of that son.

2. SAME — TRUSTEE APPOINTED TO SUCCEED FIRST TRUSTEE.   Where
the will creating such trust provided that if the executor therein
appointed to execute the trust should, at any time prior to the full
completion thereof, cease to act as such executor, two persons therein
named should be appointed to act in his stead; and such executor, after
administering the trust for a period of ten years, resigned and the
Surrogate's Court appointed one of the two persons, the other having
renounced, to succeed the first executor, the latter may exercise the
inherent discretion given by the will, as part of the trust, notwithstanding
that the one named with her did not qualify.

3. SAME — WHEN PAYMENT OF TRUST FUND TO CESTUI QUE TRUST Is
JUSTIFIABLE — EVIDENCE — EFFECT OF BAD FAITH IN EXECUTION OF
TRUST.   Where the new trustee, having paid the principal of the trust
fund to testator's son, instituted a proceeding for the judicial settlement
of her accounts, in which the wife and children of testator's son appeared
and opposed the allowance of any part of the principal so paid upon the
ground that the new trustee had no power to make such payment, and also
because she acted in bad faith and with full knowledge that testator's son,
by reason of dissipation, was unfit to do business or have control of the
fund and would waste and squander the same, it is erroneous to exclude evi-
dence in regard to the trustee's bad faith upon the ground that in no event
was the trustee authorized to pay any part of the trust fund to testator's
son, since all payments made in good faith should be allowed, but every
payment made in bad faith should be disallowed and restitution required.

Matter of Wilkin, 100 App. Div. 509, reversed.

(Argued October 10, 1905; decided November 21, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 7, 1904, which affirmed a decree of the Monroe County Surrogate's Court surcharging the account of the trustee herein upon a proceeding for a judicial settlement thereof.

James Cunningham, a resident of the city of Rochester, died on the 15th of May, 1886, leaving several children, a large estate and a last will and testament, by which, after providing for his other children, he made the following provision for his son Charles:

"*Ninth.* I give, devise and bequeath unto the executor of this my last will and testament, hereinafter to be nominated and appointed, the sum of $146,000, in trust, however, to be by him invested and to be paid, together with the increase thereof, to my son, Charles E. Cunningham, or to his wife, or children, at such time or times, in such sums and in such manner as such executor may deem best for the interest of said Charles E. Cunningham. And I hereby authorize him, if from any cause he deems it best so to do, at any time after ten years from my death, to give the whole sum of this devise and bequest then remaining in the hands of such executor (if any part shall then remain), or any part thereof, in equal proportions to the children of said Charles E. Cunningham, then living, to whom, in that event, I give, devise and bequeath the same."

By the tenth clause he gave the residue of all his real and personal property absolutely to his four children, including the said Charles, to be divided between them, share and share alike.

The thirteenth clause of the will is as follows: "In case my son, Joseph T. Cunningham, shall at any time prior to the full completion of the trust I have imposed upon him as executor of this will, for any cause cease to act as such executor, I hereby, in that event, nominate and appoint Anna M. Cunningham and Rufus K. Dryer to be and act as executors in his stead."

By the last clause he appointed his son Joseph T. Cunningham as executor. The date of the will was February 9th, 1883. Two codicils, one dated June 26th, 1884, and the other November 12th, 1885, made unimportant changes, which have no bearing upon the questions involved in this controversy. Upon the probate of the will in June, 1886, Joseph T. Cunningham was appointed executor and he administered the trust fund of $146,000 until February, 1898, when, upon his own petition, his letters were revoked and Anna M. Cunningham, who had in the meantime become by marriage Anna M. Wilkin, was appointed "trustee of the trust aforesaid," pursuant to the thirteenth clause of the will, the said Rufus K. Dryer, who is still living, having renounced his right to serve. The old trustee after accounting was discharged and the trust fund was turned over to the new trustee, who paid the income to Charles until 1901, but during that year and the year following she paid him all the principal, the last payment of $130,000 having been made on the 14th of February, 1902. Thereupon she commenced this proceeding to account, making Charles, his wife and their eight children parties. The wife and children appeared and opposed the allowance of any part of the principal so paid, on the ground that the trustee had no power to make such payments and also because she acted in bad faith and with full knowledge that Charles, by reason of dissipation, was unfit to do business or have control of the fund. The surrogate overruled the objections and allowed all the payments, but upon appeal his decree was reversed by the Appellate Division upon the law and the facts. (90 App. Div. 324.) On the second hearing no payment of principal was allowed, because the surrogate held that he was concluded by the judgment of the Appellate Division on the question of power and for this reason he refused to admit any evidence as to the competency of Charles or the bad faith of the trustee. Both the trustee and the beneficiary appealed to the Appellate Division, where the decree of the surrogate was affirmed by a divided vote, and thereupon they appealed to this court. With the con-

sent of all concerned $140,000 of the fund has been paid into court to await the final determination of this proceeding.

*James Breck Perkins* for Anna M. C. Wilkin, as trustee, appellant. The power given the executor, under the 9th clause of the will, to pay the trust fund to Charles E. Cunningham at such times and in such sums as the executor should deem best, vested in Mrs. Wilkin as sole testamentary trustee. (*Clark* v. *Wade*, 16 Ves. 27; Perry on Trusts, § 273; Chaplin on Trusts, § 638; *Jackson* v. *Burtis*, 14 Johns. 391; *Crew* v. *Dicken*, 4 Ves. 100; *Cook* v. *Crawford*, 13 Sim. 96; *Browell* v. *Reed*, 1 Hare, 434; *Flanders* v. *Clark*, 1 Ves. Sr. 9; *Crawford* v. *Forshaw*, L. R. [2 Ch.] 261; *Delaney* v. *Delaney*, L. R. [15 Tr. App.] 55; *Taylor* v. *Morris*, 1 N. Y. 341; *Niles* v. *Stevens*, 4 Den. 399.)

*Eugene Van Voorhis* and *Herbert Leary* for Charles E. Cunningham, appellant. Mrs. Wilkin succeeded to all the rights and powers which Joseph Cunningham had as trustee, and had the right and power, in the exercise of a sound discretion, to pay the principal fund to Charles E. Cunningham. (*Gilman* v. *Redington*, 24 N. Y. 12; *Tabernacle Church* v. *F. A. Church*, 60 App. Div. 334; Code Civ. Pro. § 2818; *King* v. *Donnelly*, 5 Paige, 46; *Royce* v. *Adams*, 123 N. Y. 402.) There is nothing to this trust if it be shorn of the discretionary power. There is nothing to execute. (*Pink* v. *Theusey*, 1 Mad. 157.)

*James M. E. O'Grady* for Mary E. Cunningham et al., respondents. Mrs. Wilkin had no legal right to turn over these funds to Charles E. Cunningham, and the decree of the Surrogate's Court must be affirmed on the law. (L. 1896, ch. 547, § 146; 1 Perry on Trusts, § 273; *Cole* v. *Wade*, 16 Ves. 45; Sugden on Powers, 150; *Barber* v. *Cary*, 11 N. Y. 397; *Gulich* v. *Griswold*, 160 N. Y. 401; *Taylor* v. *Morris*, 1 N. Y. 653; *Matter of Moehring*, 154 N. Y. 423; *Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 N. Y. 295; *N. Y. L. Ins. Co.* v. *Livingston*, 133 N. Y. 125; *Mills* v.

*Husson*, 140 N. Y. 99; *Cochrane* v. *Schell*, 140 N. Y. 534; *Matter of Wilkin*, 90 App. Div. 327.)

· *John Desmond* for William J. Moran, special guardian, respondent. The trust and power in the 9th and 13th clauses of the will of James Cunningham relate to personal property, but the provisions of the Revised Statutes and the Real Property Law relating to powers apply as well to powers concerning personal property as to those affecting real estate. (*Matter of Moehring*, 154 N. Y. 423; *Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 N. Y. 295; *Mills* v. *Husson*, 140 N. Y. 99, 105; *Cochrane* v. *Schell*, 140 N. Y. 534; *Matter of Van Wyck*, 1 Barb. Ch. 565.) The 9th clause creates a trust and a trust power, the ground of the power being the personal confidence in the person selected to execute it. By reason of that fact the power is limited to the persons named. The power in case of Joseph ceasing to act being given to two executors, it could not be executed by one of them. ·(L. 1896, ch. 447, §§ 138, 146; 1 Perry on Trusts, §§ 273, 505; *Cole* v. *Wade*, 16 Ves. 27; *Matter of Van Wyck*, 1 Barb. 565; 1 Sugden on Powers, § 148; *Taylor* v. *Morris*, 1 N. Y. 352; *Barber* v. *Cary*, 11 N. Y. 397; *Gulich* v. *Griswold*, 160 N. Y. 399.) The discretion of the trustee will always be controlled by the court. (*Button* v. *Hemmens*, 92 App. Div. 40; Chaplin on Trusts, 358; 1 Lewin on Trusts & Trustees, 614, ¶ 5; *Ireland* v. *Ireland*, 84 N. Y. 321; *Gott* v. *Cook*, 7 Paige, 521; *Wetmore* v. *Wetmore*, 149 N. Y. 521.) The mere fact that the language of a will gives to an executor an arbitrary discretion will not prevent the court from controlling his action and the disposition of the fund in a proper case. (1 Lewin on Trusts & Trustees, 616, ¶ 15; *Ireland* v. *Ireland*, 84 N. Y. 321; *Gott* v. *Cook*, 7 Paige, 521; Chaplin on Trusts & Trustees, 142, § 197.)

Vann, J. As we read the ninth clause of the will, the first sentence creates a trust and the second a power in trust. Since

the trust covers personal property only, it is not so restricted
as a trust of real estate, for it may embrace "any purpose
not unlawful, subject only to the law of perpetuity." (*Coch-
rane* v. *Schell*, 140 N. Y. 516, 534; *Gilman* v. *Reddington*,
24 N. Y. 12; *Gott* v. *Cook*, 7 Paige, 521.) The trust has
one purpose and the power another, and both involve the
exercise of discretion by the trustee. The trust is to invest
the sum in question and to pay it over, "together with the
increase thereof," to Charles, or to his wife or children, "at
such time or times and in such manner as such executor may
deem best for the interest of the said Charles." There is the
same right to pay over principal that there is to pay over
income. Neither is to be paid unless the trustee deems it
best for the interest of Charles, and the time and manner of
paying either, as well as the person to whom either is to be
paid, whether to Charles or to his wife or to his children, are
subject to the sound discretion of the trustee. There is no
distinction between principal and interest, for the authority
to pay the one is given by the same words which authorize
the payment of the other. The object of the trust is "the
interest of the said Charles," which is to be effected by the
payment of principal, or interest, or both, but when, how,
or within the limits named to whom, is intrusted to the judg-
ment of the trustee.

The power in trust is limited to the principal, and it could
not be exercised until after the lapse of ten years from the
death of the testator. It authorizes the trustee, after the
expiration of that period, to divide the principal then left, if
any, between the children of Charles in equal proportions, "to
whom, in that event," as the testator finally says, he gives and
bequeaths the same. The power contemplates that some part,
or even the whole of the principal may be paid over pursuant
to the trust before the time arrives when the power may be
exercised, for the will speaks of the "whole sum" of the
bequest "then remaining,  *  *  *  if any part shall then
remain." The power is of narrower range than the trust, for
it is limited to the children as beneficiaries, whereas the trust

extends to Charles and his wife as well as his children. The
power does not subvert the trust or take its place after the
lapse of ten years, but leaves it in full force. . Nothing can be
done under the power that could not be done under the trust,
and its purpose seems to be suggestive and confirmatory and
as if added from abundance of caution.

Aside from the mere investment of the fund, the trust
could not be executed in any particular without the exercise
of discretion, which is an essential and inseparable part of
the trust. Whoever the trustee may be, he is powerless for
all practical purposes, except as he uses his discretion. He
cannot make the smallest payment, even of income, to relieve
the necessities of Charles, unless he does it under the discre-
tionary power given him by the trust, as distinguished from
the power in trust. For ten years the provision for Charles
and his family, and after ten years the provision for Charles
and his wife, independent of their children, could be of no
effect without the discretionary power in the trust itself. The
entire purpose of the testator, as expressed in the ninth clause
of his will, depends for fulfillment upon that feature of the
trust. The decision of this controversy depends wholly upon
the trust and in no respect on the power in trust, which was
never exercised, as no division was made among the children
to whom the power in trust is limited. By the terms of the
bequest the legal title to the fund was in the trustee for the
purposes of the trust, and in the disposition made by her she
exercised no power or authority that was not an inherent part
of the trust proper. A trustee with power to invest money
and to pay over the increase is entitled to receive the income
from the investment and thus takes the legal title and would
even if the subject were real estate. (Real Property Law,
§§ 77, 80.)

In 1897 the ninth clause of the will was construed by a
decree of the Supreme Court, all persons interested being
parties and no one appealing, in an action brought by Joseph
Cunningham for the construction of the will in question.
The court decided that " the ninth clause of the said will is

valid and that it created a valid trust in favor of " Charles, his wife and children, " to continue during the life of Charles unless sooner terminated by the trustee in the manner specified ; " that " the executor and trustee has the right under the terms of the said will, in his discretion, to give to the defendant Charles E. Cunningham, or to his wife, the defendant Mary E. Cunningham, or to their said children, the whole of the said trust fund, or any part thereof, or of the income thereof, at such time or times, in such sums and in such manner as the said trustee and executor may, in the exercise of a sound discretion, deem best for the interests of the said Charles E. Cunningham."

The court, having thus construed the trust, next took up the power in trust and treated it as follows : " That ten years having elapsed since the death of the said testator, the said executor and trustee has the power under the said will, if for any cause he deem it best so to do, to give the whole of the said trust fund and accumulations thereof to, and to distribute the same in equal shares among, the children of said Charles E. Cunningham living at the time of such distribution." This decision stands as the law of the will in question and is binding upon courts as well as parties. We have followed it as far as it goes and have so amplified it as to cover other grounds not considered or presented for consideration in the action in which the decree was made.

The discussion, therefore, of what may be done under a power in trust, the execution of which is intrusted to two or more persons, is foreign to the subject in hand. The rule in that regard, either at common law or under the statute, does not now perplex us. Whether the new trustee, acting alone, could or could not exercise the discretion conferred by the power in trust upon herself and Mr. Dryer, is not before us, for there was no attempt to exercise that power. All that was done was done under the trust. The terms of the trust measure the authority of the trustee, so far as it has been exerted, and to the trust only must we look to see whether she exceeded that authority. As the trust is limited to per-

sonal property, it is valid, for it does not violate the law against perpetuities or the policy of the law against immoral or other unlawful purposes. Its validity is in nowise dependent upon the rule governing trusts of real estate, which provides that a trust of realty that does not come within the four purposes for which such a trust may be created, is valid only as a power in trust, the trustee taking no title.. (Real Property Law, § 79.)

We, therefore, have a trust of personal property that cannot be executed without the exercise of discretion. The testator, apparently anxious to avoid the effect of improvidence on the part of one of his children, created a trust for his benefit, clothing the trustee with power to act according to circumstances and do what was best, in his sound judgment, for the interest of that child. Discretion in paying over was uppermost in his mind, for there was no absolute direction to pay either principal or income in any amount, or in any manner, at any time or to any person. Discretion was of the essence of the trust, for without it the trust was barren and nothing could come from it. With it, an improvident son with a large family could be properly cared for and if the passing years brought good judgment and good conduct, which was evidently hoped for, that son could receive the inheritance intended for him the same as the other children of the testator. There was nothing, however, for any one, until the discretion of the trustee came into action, for discretion was requisite to the execution of the trust.

Under these circumstances, to hold that the new trustee, selected by the testator, could not exercise the inherent discretion given by the will, as a part of the trust, because the one named with her did not qualify, is to hold that the trust could not be executed at all. It would defeat the intention of the testator and abrogate the trust. The discretion belonged to the position of trustee and the trust would be paralyzed were it otherwise. The resignation of the old trustee and the renunciation of Mr. Dryer, which, as the testator is presumed to have known the law he must have had in con-

templation as possible, were not intended by him to strangle the trust if those events should happen. Whatever the law may be in relation to the execution of a power in trust, no statute or controlling decision prevents the execution of a trust pure and simple, such as the one under consideration, by the only acting trustee out of several nominated by the testator.

The discretion of the trustee was not absolute, but it was a sound discretion, to be exercised according to her best judgment and in the best of faith, which is always true of such authority, unless stated in terms to be otherwise. Discretion may excuse honest errors of judgment, but it never excuses bad faith, which violates the fundamental principle upon which every trust rests, for a trust implies confidence and confidence excludes bad faith. The practice of bad faith by a trustee is treason to the law of his existence.

The respondents alleged in their answer " that said Charles E. Cunningham was and is not a fit person to have the custody and control of the said trust fund and the proceeds thereof, and was not a fit person to have its custody and control at the time the alleged payments from said principal of said trust fund, or any one of them, were made by said·trustee; that the said Charles E. Cunningham is now and has been for more than twenty years an habitual drunkard, by reason whereof he is now and has been during that time incapacitated for properly transacting business or to have control of said fund, all of which facts were well known to said trustee; that in paying the principal of said trust fund to said Charles E. Cunningham said trustee acted in bad faith and with the knowledge on her part that he would waste and squander the same."

The issue thus tendered was not tried by the surrogate, who, on the objection of the trustee, excluded the evidence offered to sustain the allegations of the respondents in relation to her bad faith. The ruling of the surrogate was founded on the conclusion reached by the Appellate Division on the first appeal that in no event was the new trustee authorized to pay any part of the fund to Charles E. Cunningham. A new

8

114    People ex rel. Conine *v.* Steuben County.    [Nov.,

Statement of case.    [Vol. 183.

trial is, therefore, necessary to determine the issue above referred to, and as it becomes necessary on account of the objection of the trustee, the fact will doubtless be given due consideration upon the final award of costs.

We think that the trustee, as the executive officer of the trust, was authorized in her sound discretion to pay over the principal of the trust fund to Charles E. Cunningham ; that all ·payments by her made in good faith should be allowed, but that every payment made in bad faith should be disallowed and restitution required.

The order of the Appellate Division and the decree of the surrogate should be reversed and a new trial granted, without costs of this appeal to either party.

Cullen, Ch. J., Gray, Bartlett and Haight, JJ., concur; Werner, J., not voting ; O'Brien, J., absent.

Order reversed, etc.