ROBERT M. STEIN

*vs.*

SAFE DEPOSIT & TRUST COMPANY OF
BALTIMORE, Trustee.

AMY STEIN, ELSIE STEIN BLONDHEIM and
ADOLPH BLONDHEIM

*vs.*

SAFE DEPOSIT & TRUST COMPANY OF
BALTIMORE, Trustee.

*Trusts and trustees: no power to alter terms of trust; discretion
and powers; when—are personal; substituted trustees;
acceleration of time for appointment. Wills: inter-
pretation; —from language used.*

Trustees have no power to alter the nature and object of the
deed or will appointing them, or under which they derive their
powers, nor to dispense with the exact performance of the con-
ditions imposed upon them.                              p. 215

The directions of a testator, when plain, unambiguous and in
violation of no established principle of law, must of necessity
prevail.                              p. 217

In interpreting wills, the question of intent is to be sought
from the language used by the testator; it is not a question of
what the testator may have meant, but simply what is the
meaning of the words he used.                              p. 215

Nor does any such power reside in a court of chancery. p. 215

Where power is given to an executor or trustee by reason of special confidence in the individual, or to be exercised only upon their personal judgment or discretion, no such power will pass to a substituted trustee.                                    p. 214

By his will, M. S. left his estate to his wife and certain other trustees in trust, with certain broad and discretionary powers, and further provided that upon the *death* of his wife, the other trustees were to assign and convey the trust estate to the Safe Deposit and Trust Company, for the purposes of the trust; it was also provided that in the event of the estate *passing into the hands* of the said Trust Company, the discretionary powers theretofore given to the trustees should be exercised by the President of the Trust Company alone: *Held,* that upon the *resignation* of the wife (the other trustee having died or refused to act), the property was to be conveyed to the Trust Company, and the discretionary powers referred to were to be exercised by its President, in the same manner as would have been the case upon the wife's death.                               p. 214

The creator of a trust has full power to provide for the appointment of a successor or successors in the trust, in case the original trustee refuses to act, dies or is removed.     p. 212

If the substitution of a new trustee is provided for in the will, either by naming the person to be substituted trustee, or by giving the power of appointment to another person, the substituted trustee, named in accordance to such provisions, takes under the will and derives the power to act from the testator.

p. 212

The discharge of the duties of a trustee with relation to the trust may be performed by such substituted trustee, even though such substitution was made at a different and earlier time from that which the testator or creator of the trust contemplated.

p. 213

The acceleration of legacies under certain conditions has long received judicial sanction. The same principle may be applied to the administration of a trust.                          p. 213

In general, and unless the intention of the testator appears clearly to be otherwise, where any of several trustees disclaim,

the remaining trustees or trustee will not only take the entire legal estate, but also all the powers and authorities vested in the trustees as such, and which are requisite for the administration of the trust.                                pp. 213, 214

Equity will never allow a trust to fail for lack of a trustee.
                                                 p. 213

Where a provision in a will leaving property in trust declared that in the discretion of the trustees, the portion of one of the *cestuis que trustent* should, under certain conditions be paid to him absolutely, it applies to the whole of such child's portion, and not to any part less than the whole.        pp. 216-217

*Decided December 7th, 1915.*

Cross-appeals from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*L. Edwin Goldman,* for Robert M. Stein.

*Joseph N. Ulman* (with whom were *Saml. J. Harman, Chas. H. Knapp,* and *Clarence A. Tucker,* on the brief), for Amy Stein *et al.*

*Eli Frank* (with whom were *German H. H. Emory* and *C. John Beeukwes,* on the brief), for the Safe Deposit and Trust Company, Trustee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Michael Stein, who had been the head of a banking firm in the City of Baltimore for a number of years, died on January 24th, 1903, leaving a last will and testament. His family consisted of his widow, Emma Stein, three daughters and one son. By his will, which bears internal evidence of

unusual care in its preparation, he left, after two charitable bequests, certain carefully described property to his wife, and then the balance of his estate was directed to be treated as a residue, which was given to his wife Emma Stein, his brother Simon Stein and Bernard Blimline, in trust, to collect the income, and after the payment of necessary expenses "to pay to my wife in each and every year during the term of her natural life, except as hereinafter limited, one-third of the net income thereof, and to pay the balance or remainder of the net income share and share alike to my children * * * and from and immediately after the death of my wife then the survivor or survivors of said trustees, in further trust, to assign, transfer and convey my estate or so much thereof as shall still be held in trust to the Safe Deposit and Trust Company of Baltimore."

By the next succeeding clause he gives, devises and bequeaths the estate so to be transferred to the Safe Deposit and Trust Company, in trust, to carry out certain trusts particularly set out. Then follows the clause which has given rise to this litigation, and which is as follows:

"8. Notwithstanding the trusts hereinbefore declared of and concerning my estate, I empower my Trustees, Emma Stein, Simon Stein and Bernard Blimline, and the survivors or survivor of them, or a majority of them, to assign and convey absolutely to my son when my son shall attain the age of twenty-one years or at any time thereafter, two-fifths of my estate, if in the judgment of said trustees the survivors or survivor of them, or a majority of them it shall at any time appear to be for the benefit and advantage of my son to receive said two-fifths of my estate absolutely, and also to convey and assign absolutely to my son his share in the corpus of my estate as ascertained and determined by Item 7, Section B, of this will in the event of any of my daughters dying without leaving issue living at the time of her death, but in no event to convey and assign such share until after the death of my wife.

"It is my will and intention by this provision to give said trustees full discretionary power to act so that the best interests of my son will be thereby secured, I desire expressly to state that I grant this power to said trustees to give my son a greater share of my estate than each of my daughters will receive not by reason of any preference I have for him, but inasmuch as I think he should receive sufficient capital to enter into business, if he proves himself capable and so desires. In the event that my estate shall have passed into the hands of the Safe Deposit and Trust Company and my son shall not have received his share of my estate absolutely under this provision of my will, then I desire the discretionary power herein granted to vest in the president of said company, and Simon Stein and Bernard Blimline, or the survivor of them, or should both be dead, in the president of said company alone."

The Simon Stein referred to, and appointed as trustee, died before the death of the testator, and by a codicil the testator appointed Simon H. Stein an executor and trustee in the place of Simon Stein, and conferred upon him the same powers, duties and obligations as were imposed by the will upon Simon Stein.

Prior to the completion of the administration Bernard Blimline was relieved by the Orphans' Court from acting as executor, and when the estate came to be passed over from the executors to the trustees, Mr. Blimline renounced the trust and refused to act; the duties of the conduct of the trust were then performed by the two remaining trustees, Emma Stein and Simon H. Stein, until the death of the latter in September, 1913. Mrs. Stein continued to act as sole trustee from then until January, 1914, when she was relieved on her own application, by an order of Court. A little later, on April 25th, 1915, the Safe Deposit and Trust Company was appointed as trustee in her place and stead.

On March 6th, 1915, the Safe Deposit and Trust Company filed a petition reciting the history of the estate, pray-

ing the Court to assume jurisdiction of the administration of the trust, and construe certain clauses of the will. From this petition it appears that Robert M. Stein, the son of Michael Stein, had applied to the Trustee to have paid over to him the sum of $10,000, under what he claimed to be the provision of the clause of the will previously quoted. The $10,000 so .asked to be paid over was not the "two-fifths" of the estate of Michael Stein, but was in reality only about one-tenth of the two-fifths.

The questions presented for consideration are two: Has the discretionary power given by the will now become vested in the president of the Safe Deposit and Trust Company, or does it remain in abeyance until the death of Mrs. Emma Stein; and second, Whether, if such power exists, it could be exercised only as to two-fifths of the estate, and not to any smaller portion thereof.

By an order of the Circuit Court the case was referred to Mr. Coe as Master in Chancery for examination and report, and his report filed in September, 1915, is a most elaborate and carefully considered discussion of the case, in which he reaches the conclusions that the discretionary power is now vested in the president of the Safe Deposit and Trust Company of Baltimore, and that the said power can be exercised only as to the two-fifths of the trust estate, but not to any smaller portion thereof.

On this report a decree was passed which has been appealed from by the son, Robert M. Stein, in so far as it holds that the power can be exercised only as to two-fifths of the estate, and not to the smaller fractional part, which was asked for by him; and the daughters of Mr. Stein have appealed from that portion of the decree which holds the discretionary power to be now vested in the president of the Safe Deposit and Trust Company.

An elaborate discussion of these questions seems hardly necessary. Upon the first question the rule laid down in *Hill on Trustees*, pp. 226, 227, is that: "Where one of two or more trustees disclaims, the remaining trustee or trustees

will take not only the entire legal estate, but also all the powers and authorities vested in the trustees as such, and which are requisite for the administration of the trust."

In the present case we find that of three named trustees, one has died, one never accepted the trust but refused to qualify for its execution, and the remaining one has by her own act been excused from further acting as such trustee. It has already been pointed out that Mr. Stein in his will made provision for a transfer of the trust from the trustees first named to the Safe Deposit and Trust Company as a successor in the office of trustee. · It is true that no transfer appears from the record to have been made to the Safe Deposit and Trust Company in strict accordance with the terms of the will, but we have a case where the Court of Chancery has appointed as trustee the corporation which was named by the testator in his will as the body which he wished to succeed to the conduct of the trust after the individuals named. Therefore, much of what was said in *Preston* v. *Safe Deposit and Trust Co.*, 116 Md. 211, with regard to the exercise of a power of sale given by a will under an assumed grant of authority from a decree of Court, is applicable in this case, and there is presented a situation in which the language in *Yates* v. *Yates,* 255 Ill. 66, is peculiarly applicable, when it says: "The creator of a trust has full power to provide for the appointment of a successor or successors in trust, in case the original trustee refuses to act, or dies, or is removed by a Court of competent jurisdiction. * * * If the substitution of a new trustee is provided for by the author of the trust, either by naming the person to be substituted, or giving the power of appointment to another, when the provision for succession is duly followed the substituted trustee takes under the will and derives the power to act from the act of the testator. Upon the appointment being made under the power, the new trustee becomes vested *ipso facto* with the title to the trust premises and is clothed with the same power as if he had been originally named in the will."

The distinction between that case and the present lies only in the fact that the succession of the Safe Deposit and Trust Company to the trust created by the will of Michael Stein was not in strict accordance with the provisions of that will, the departure being that no conveyance appears to have been made as provided in the will, and the appointment which was made came, not after the death of Mrs. Stein, but upon her retiring from the execution of the trust, but both upon reason and authority it is difficult to see how that distinction can so affect the powers now possessed by the Safe Deposit and Trust Company as to render the execution of the trust impossible. In *Sells* v. *Delgado,* 186 Mass. 25, it was held that a discretionary power to convey is not limited to the first named trustees. In the will which was under consideration in that case, two trustees were named, one of them never qualified, and the other died, and a new trustee had been appointed to succeed them. In its facts, therefore, that case closely approximates the present. This situation has been referred to in the brief of counsel as an acceleration, and no authority has been cited as opposed to the suggestion that the discharge of the duties of a trustee with relation to a trust may not be performed by a substituted trustee, even though such substituted trustee had been appointed at a different and earlier time from that which was in contemplation of the testator or creator of the trust. The acceleration of a legacy under certain conditions has long since received judicial sanction. And with even greater reason may a similar doctrine be applied to the administration of a trust, since equity will never allow a trust to fail for lack of a trustee.

No one can be compelled *in invitam* to act as an executor or trustee, and since in the present case of the three trustees named by Mr. Stein in his will, one has died, one never qualified and absolutely refused to act, and the third, after acting for a time, has been relieved from further discharge of the duties upon her own application, unless such acceleration is possible there must inevitably be a period of time in which there is no one clothed with the power to act as

trustee, and discharge the duties of the trust. That such a condition should ever arise was manifestly not for a moment in contemplation of the testator. His provisions were most elaborate and careful, and to hold that a hiatus now exists would be to thwart the perfectly plain intent and desire of the testator. This a Court, and particularly a Court of Equity, will never do. What it seeks to do is to carry out and in so far as possible to give effect to that intention. *Schapiro* v. *Howard,* 113 Md. 360.

Considerable stress was laid in argument upon the contention that the discretionary power granted was one evidencing a special confidence, and therefore only to be exercised by the trustees originally named in the will. It is true as a proposition of law, that where a power given to an executor or trustee by reason of the special confidence in the individual, or is to be exercised only upon his or their personal judgment and discretion, that no such power will pass to a substituted trustee. *Md. Cas. Co.* v. *Safe Deposit and Trust Co.,* 115 Md. 344; *Mercer* v. *Safe Deposit and Trust Co.,* 91 Md. 118. But can this be properly said to have been a trust to be exercised by reason of a special confidence in a particular trustee? The same power, identically, was conferred upon the president of the Safe Deposit and Trust Company. Had Mrs. Stein continued as trustee until the time of her death, and had the assignment been then made by Mr. Blimline to the Trust Company in strict compliance with the terms of the will, there could have been no question but that the full and ample power given by the will was in the president of the Safe Deposit and Trust Company. In the 8th clause, however, the language of the will is, "in the event that my estate shall have passed into the hands of the Safe Deposit and Trust Company," etc. It does not say that from and after the death of my wife, the president of the Trust Company shall have and exercise the discretionary power, but that power was to devolve upon him when the estate passed into the hands of the corporation as trustee. The devolution of power must, therefore, be regarded as com-

plete and in accord with the clear, unmistakable intent of the testator.

There remains the second of the two questions; namely, whether the discretion of the trustee is one to be exercised solely as regards the two-fifths of the estate, or whether that discretion is sufficiently broad to admit of payments of a lesser sum. It has long been the settled law in this State that the trustees have no power to alter the nature and object of the deed or will appointing them, or under which they derive their power, nor to dispense with the exact performance of the conditions imposed upon them. Neither has a Court of Chancery that power. *Dolan* v. *Baltimore City,* 4 Gill, 395. It is necessary, therefore, to look to the provisions of the will in the light of the circumstances surrounding the testator when he made it. In ascertaining that intention of the testator, courts are bound to look to the intent as expressed in the will. The question is not what the testator meant, or may have meant, but simply what is the meaning of the words he used. *Schapiro* v. *Howard, supra.* And that language is to be interpreted according to its plain meaning and import, not by applying some strained or artificial course of reasoning. *Abell* v. *Abell,* 75 Md. 57.

By express language in section 8, authority is given to the trustees of Mr. Stein in their discretion to assign and convey absolutely to his son, two-fifths of his estate. There is no suggestion that the trust may be performed by a succession of payments on an instalment plan, of less sums than the two-fifths, until they amount in the aggregate to that portion of the trust estate. In the antecedent clauses of the will reference is a number of times made to the provision contained in the clause numbered 8, for the benefit of Robert, and wherever it occurs the language used is invariably "the part of my estate." Throughout the testator refers to it in that manner, and in none other, and in this respect the provisions of the will differ widely from many of the cases cited by the counsel for Mr. Stein on their brief and in their argument.

Thus in the matter of *Wilkin,* 183 N. Y. 104, which arose under the will of James Cunningham, the testator provided that the trustee should pay the amount of the trust fund, $146,000, to his son Charles, or to his wife or children, at such time or times, *in such sums,* and in such manner as the executor may deem best. This provision clearly contemplated that the payments should be made by instalments, and not in a single lump sum.

The case of *Cooley* v. *Kelley,* 96 N. E. 642, which arose under the will of Wm. J. Harper, presented a situation where the will in terms provided that the trustee should pay to the testator's son, Thomas, the whole *or a part* of a certain sum. In *Barrett's Case,* 53 Pa. Sup. Ct. 103, the devise of the $5,000 for the benefit of the testator's nephew, gave to the trustees the power "to spend said money, principal and interest, in any way and at any time that they may deem proper for the benefit of" the nephew.

Cases of this character, therefore, afford no guide for a situation like the present, where a specific portion of the testator's estate is given to his son, and that gift is elsewhere throughout the will definitely referred to as "the part," without any words or expression to indicate that it was the idea or purpose of the testator that this part was to be treated in a piecemeal manner. Moreover, the effect of the payment of the lesser sum than the two-fifths would operate materially to disarrange the other provisions of the will. No argument will be necessary to establish this fact; it sufficiently appears from the supplementary answer of Robert M. Stein, in which, to obviate the disarrangement which would be produced by the granting of his petition, he tenders four different possible constructions, as they are termed, by which the intent of the testator may be carried out. It has already been remarked that the will itself in this regard is entirely free from any uncertainly or ambiguity. The only manner in which the provisions could be made ambiguous or uncertain, would be by granting the request of Mr. Stein that he be paid $10,000 at the present time, on account of his two-

fifths interest in the trust estate. The argument was advanced that since the greater always includes the lesser, therefore, the provision which gave to Robert M. Stein, under certain conditions, two-fifths of the estate, must of necessity give him a smaller fraction thereof. Specious as this argument is, it is none the less fallacious, for the reason that it is not in accordance with the plain, unambiguous direction of the testator, and that direction not being contrary or doing violence to any established principle of law must of necessity control.

The will, by its terms, imposed a wide and important discretion in the trustees or trustee, as to the time of passing to Robert M. Stein, his part, two-fifths, of the estate of the testator. But that discretion was one to be exercised by the trustees or trustee, and is not a matter for review by this Court, unless the exercise of it or refusal to exercise it, is either arbitrary or palpably unreasonable, neither of which conditions are alleged in this case; and, therefore, the Court has no occasion to consider the manner of the exercise of the discretion by the president of the Safe Deposit and Trust Company acting under the power conferred upon the trustees.

For the reasons given, the decree appealed from in each of the cases will be affirmed.

> *Decree appealed from affirmed in each case, the costs of both appeals to be paid by the Trustee and charged by it against the corpus of the Trust Estate in such manner that the same shall be ultimately payable out of the share of the children of Michael Stein in proportion to their respective shares in his estate.*