In the Matter of the Estate of ADOLPH BRUCHES, Deceased. MIRIAM GAZINSKI, Appellant; NATHAN STARKSCHALL, Respondent.

Second Department, April 23, 1979

## APPEARANCES OF COUNSEL

*David G. Fusfeld* for appellant.

*Allan Maurer* for respondent.

## OPINION OF THE COURT

SHAPIRO, J.

This is a proceeding to compel a testamentary trustee to make payment of the remainder interest of a $10,000 testamentary trust. The Surrogate granted the trustee's motion for summary judgment stating that "no triable issue of fact has been presented." I disagree.

### THE FACTS

The will of the decedent, Adolph Bruches, was executed on January 21, 1958. He had no children. The first dispositive provision, paragraph SECOND, established a trust of $10,000 and required the trustee to "pay over the net income therefrom to my said wife [Anna Bruches] during her lifetime * * * Upon the death of my said wife, my Trustee shall pay over the corpus of the said trust to my niece MIRIAM GAZINSKI * * * to be hers absolutely." It then provided that if Miriam Gazinski predeceased the decedent or his wife, her "share" was to be given to her issue.

The next dispositive provision, paragraph THIRD, devised the rest of the decedent's property to his wife (par. SIXTH named her as executrix) and paragraph FOURTH provided that if decedent and his wife died in a common disaster the rest of the estate was to be given in equal shares to seven nieces and nephews, one of whom, Miriam Gazinski, was stated to be *"my* niece" (emphasis supplied); the other six were stated to be *"my wife's* nephews and nieces" (emphasis supplied), one of whom was Ruth Starkschall. He named the latter's husband, Nathan Starkschall, the respondent here, as both the substitute executor of his will and the trustee of the testamentary trust.

Paragraph FIFTH contained seven numbered subparagraphs, all relating to the duties of the testamentary trustee. The seventh subparagraph provides: "Anything herein contained to the contrary notwithstanding, my Trustee may, at any time, and from time to time, pay over to my said wife, *so much or all of the principal* of the trust for the benefit of my wife *as he may, in his absolute discretion deem advisable,*

which payments shall be absolute and free from all trusts, and the judgment of my Trustee as to the amount of such payments and the advisability thereof *shall be final and conclusive upon all persons* interested in, or who may become interested in, my estate, or such trust, and *upon making any such payments, my Trustee shall be fully released and discharged from all further liability* or accountability therefor. *I request, however, that in exercising the power granted in this paragraph, my said Trustee shall be guided by considerations of need on the part of my said wife"* (emphasis supplied).

The decedent died 14 years later, on January 13, 1972. His will was admitted to probate on February 1, 1972 and respondent, Nathan Starkschall, was duly granted letters testamentary and of trusteeship. Less than two months later, on March 10, 1972, he paid the entire trust principal of $10,000 to the widow, Anna Bruches.

A year and a half later, on September 2, 1973, Anna Bruches died. In March of 1977 petitioner instituted this proceeding for a decree directing respondent to pay to her the sum of $10,000, with accrued interest from the date of the death of Anna Bruches.

The petition, *inter alia,* asserted that the trustee improperly paid the $10,000 corpus to Anna Bruches during her lifetime since she "had no need for the same, and possessed assets in excess of $500,000." The respondent's answer denied the allegation that Mrs. Bruches "had no need for the principal of the corpus paid to her."

Respondent thereafter moved, *inter alia,* for summary judgment. In explanation for his making payment of the principal of the trust to Mrs. Bruches, he said:

"3. At the time of ADOLPH BRUCHES' death on January 13, 1972, ANNA BRUCHES, to whom he had been married for over 25 years, was in very poor health. She was a woman in her 70's, and suffering from cancer, and in fact, died in September, 1973, not very long after decedent's death.

"The only asset of ADOLPH BRUCHES subject to probate was a half-share in a corporation known as RONKONKOMA WINE & LIQUOR STORE, INC., the other half was owned by decedent's wife, ANNA BRUCHES. The store had been established as a family operation by ANNA BRUCHES about 1937, and was owned solely by her until 1966 when she incorporated and gave half of the stock to her husband, since he had been in poor health with serious heart problems for several years and

was desirous of becoming eligible for Social Security benefits * * * Incidentally, these shares of stock were the only assets of the Estate which were solely in ADOLPH BRUCHES' name.

"4. When ANNA BRUCHES read the terms of the Will, she was overwrought for the following reasons:

"First, she told me that when she and the decedent had traveled to Israel, they visited the Petitioner and her husband, who were, and still are, residents of Israel. Although they had been generous to the GAZINSKIS, sending them, in addition to cash, a refrigerator and a Lincoln limousine so that MR. GAZINSKI could work as a taxi driver, they were received with very little hospitality. MRS. BRUCHES *was very angry because of this and kept remonstrating to me that the Petitioner should not reap any further benefits, especially since, in view of her fatal illness, the principal of the trust would become the property of the Petitioner in the very near future.* Furthermore, she was upset that in order to satisfy the legacy and fund the trust, the half-interest in the liquor store corporate stock, which was the only asset in ADOLPH BRUCHES' sole name at the time of his death, would have to be sold. The liquor store was a very important part of her very existence for so many years and until she was unable to function any more, she had devoted a major share of her time and attention to its operation. Thus, in addition to her terminal illness from cancer, she had another 'cancer' continually gnawing at her; namely, the fact that the Petitioner would eventually either get the decedent's share of stock, or said stock would have to be sold.

"5. *It was in view of these serious psychological needs of* ANNA BRUCHES *that I, in my judgment, decided to turn over the corpus of the trust to* MRS. BRUCHES. I truly felt that for her best interests, for her peace of mind, and security, that my decision was the right one. In so doing, I avoided causing her any further physical and psychic trauma; in fact, she was much calmer and peaceful after I had paid over the corpus to her. *True, she was not in financial need at the time, but due to her state of mind, this was the only right thing to do"* (emphasis supplied).

The answering affidavit of petitioner's counsel asserted that "the intent of the testator was that the trust principal be held intact, to be paid to the wife only if she needed it"; that the will "imposed a limitation upon the Trustee's absolute discretion to pay out the trust principal based upon the need of the

wife"; and that the trustee's payment to Mrs. Bruches was done "arbitrarily and for no reason other [than] that the wife was embittered against the petitioner and did not want her to have any part of the trust principal."

## THE CHRONOLOGY OF EVENTS

(1) Decedent's will was executed on January 21, 1958.

(2) Decedent died on January 13, 1972 and his will was admitted to probate on February 1, 1972.

(3) Decedent's wife, Anna Bruches, executed her will on February 17, 1972 leaving an estate of $729,725. In her will she named the respondent as executor-trustee, bequeathed $5,000 to his son and bequeathed one fifth of her residuary estate to his wife.[1]

(4) Twenty-two days thereafter, on March 10, 1972, the respondent, as trustee, paid over the entire estate to Anna Bruches, who was then afflicted with terminal cancer.

## THE DECISION OF THE SURROGATE

The Surrogate in his decision focused on the last sentence of the seventh subparagraph of paragraph FIFTH of the will ("I request, however, that in exercising the power granted in this paragraph, my said Trustee shall be guided by considerations of need on the part of my said wife"). He concluded that the use of the word "request" demonstrated that the decedent "meant simply to advise or inform and, therefore, is precatory in nature". He then stated: "It appears that the will was drafted with care and precision[2] and the probability is that had a direction been intended more appropriate language would have been used". He nowhere discussed the question of whether, in paying over the corpus, the trustee was motivated by reason of personal gain to himself and members of his family accruing to him and them under the will of Anna Bruches who, then, by his own admission, was suffering from a "fatal illness"—"terminal illness from cancer".

1. We have sent for and taken judicial notice of the Surrogate's file in the estate of Anna Bruches (see Richardson, Evidence [Prince, 10th ed], §§ 14, 30, 652), and the facts and figures set forth in our opinion are from that record.

2. The affidavits on the summary judgment motion do not discuss the circumstances surrounding the drafting of the will. However, a *lack* of care is indicated by the fact that it makes no provision as to distribution of the estate if Anna Bruches predeceased the testator.

THE LAW

In my view the issue here is not whether the word "request" connotes "precatory". Clearly, the language and the context within which such language was used indicate that the "request" was precatory. However, that was not the determinative issue on respondent's motion for summary judgment. Rather, it was whether a court may set aside the action of a trustee in turning over the corpus of a trust to the beneficiary, thus terminating the trust, where there is a question of whether he made the payment with an improper motive or for his own pecuniary benefit, even though the will establishing the trust gave him full discretion so to do.

The law is clear that if the trustee acted from improper motives the remaindermen will be made whole (*Matter of Wilkin,* 183 NY 104; see Ann, 143 ALR 467; 76 Am Jur 2d, Trusts, § 297, pp 519-520; 61 NY Jur, Trusts, § 294, § 521, pp 713-714; 1 Restatement, Trusts 2d, § 187).

In *Matter of Wilkin (supra),* the court held that the Surrogate had erred in excluding the evidence offered to show that a testamentary trustee acted in bad faith in turning over the entire principal of the trust fund to the beneficiary. The court said *(supra,* pp 113-114): "The discretion of the trustee was not absolute, but it was a sound discretion, to be exercised according to her best judgment and in the best faith, which is always true of such authority, unless stated in terms to be otherwise. Discretion may excuse honest errors of judgment, but it never excuses bad faith, which violates the fundamental principle upon which every trust rests, for a trust implies confidence and excludes bad faith. *The practice of bad faith by a trustee is treason to the law of his existence * * * [A] payment made in bad faith should be disallowed and restitution required"* (emphasis supplied).

The Restatement of the Law of Trusts 2d (vol 1, § 128, p 279), states: "Where the trustee is given discretion [to invade the principal for the benefit of the income beneficiary], the court will not interfere with the exercise of his discretion *except to prevent an abuse by the trustee of the discretion given him.* See § 187" (emphasis supplied). Comment *e* of the text of section 187 states (p 403): "*No abuse of discretion.* If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, *or with an improper even though not a dishonest motive,* or fails

to use his judgment, or acts beyond the bounds of a reasonable judgment" (emphasis supplied). Comment *g* thereof states (p 404): "*Improper motive.* The court will control the trustee in the exercise of a power where he acts from an improper even though not a dishonest motive, that is where he acts from a motive other than to further the purposes of the trust. Thus, if the trustee in exercising or failing to exercise a power does so because of spite or prejudice *or to further some interest of his own* or of a person other than the beneficiary, the court will interpose. Although ordinarily the court will not inquire into the motives of the trustee, yet *if it is shown that his motives were improper* or that he could not have acted from a proper motive, the court will interpose" (emphasis supplied).

Although this was a motion for summary judgment, the respondent took it upon himself to offer a factual explanation for his compliance with the demand of Anna Bruches, going so far as to describe the essence of the conversations between them. By so doing, he implicitly recognized that his motivation was in issue and that, indeed, his discretion was *not* absolute. His *factual* argument is that Mrs. Bruches hated Miriam Gazinski for her supposed ingratitude. (We note that Miriam Gazinski was the only person named in the will who was a blood relative of *Mr.* Bruches.) Apparently Mr. Bruches did not share this dislike, even after the visit to Israel, since he did not change his will wherein he preferred Miriam Gazinski over the blood nieces and nephews of his wife. He still wanted his sole blood niece to receive $10,000 after the death of his wife.

██ We cannot close our eyes to the fact that when Anna Bruches confronted the trustee, Nathan Starkschall, with the demand that Miriam Gazinski "should not reap any further benefits", she was not talking to a trustee who was completely free to call the shots. If, at the time Mr. Starkschall terminated the trust by delivery of the $10,000 *res* to Mrs. Bruches, he knew (1) that his wife was a substantial legatee to the tune of more than $100,000 in the will of Mrs. Bruches (who was then dying of terminal cancer); (2) that his son was also a beneficiary under that will; and (3) that he was named as executor and trustee under her will, with the right to considerable commissions (estimated in his accounting to be $16,949.84), it is clear that he would not want to arouse her ire lest he, his wife and his son be removed as beneficiaries under her will. Under such circumstances the Surrogate erred

in holding, as a matter of law, that the trustee was not *improperly motivated in terminating the trust,* for "a trustee must act in good faith and will not be permitted to use his trusteeship for his individual advantage, benefit, or profit" (61 NY Jur, Trusts, § 294, p 489; *Matter of Fulton,* 253 App Div 494; *Pyle v Pyle,* 137 App Div 568, affd 199 NY 538).

As the immortal Chief Judge CARDOZO said, although in another context *(Meinhard v Salmon,* 249 NY 458, 464): "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions *(Wendt v. Fisher,* 243 N.Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

Though the trustee here was given "absolute discretion" by the will, he could not exercise that discretion to feather his own nest. We therefore hold that the Surrogate erred in holding that "no triable issue of fact has been presented."

The order of Surrogate's Court granting summary judgment should be reversed and the proceeding remitted for trial.

MOLLEN, P. J., TITONE, MARGETT and MARTUSCELLO, JJ., concur.

Order of the Surrogate's Court, Suffolk County, entered July 5, 1978, reversed, without costs or disbursements, motion for summary judgment denied, and proceeding remitted to the Surrogate's Court for a trial as to the petition.