FREDERICK STUMP, and others *vs.* EDWARD C. JORDAN, and others.

*Construction of a Will—Life estate—Rule in Shelley's Case—Signification of the word " Children."*

The will of J., executed in June, 1844, and admitted to probate in July, 1845, contained the following clause: "Item. I will and bequeath unto my niece, Catharine J. Edie, all that part of my real estate lying on the east side of the Elkton road, on which I now reside, adjoining the lands of Joseph Alexander, Jones Mathias, and others, containing about ninety acres, more or less, to her, the said Catharine J. Edie, *during her natural life-time,* and at her death, I will and devise the said land to her *children, if she have any;* in the event however of her death without *lawful issue,* I devise and bequeath said land to my next kindred by law; I also direct that in the event of my said niece, Catharine J. Edie's dying without lawful *issue,* then in that case her husband, Arthur J. Edie, (should he survive her,) shall have the free use and benefit of the land heretofore and above bequeathed to her, the said Catharine J. Edie, for the period of thirteen years from the decease of his wife, the said Catharine J. Edie; provided that the said Arthur J. Edie does not wantonly injure the said property during the period of thirteen years." At the date of the will, Mrs. Edie had no children, and she died in April, 1864, without ever having had a child born alive, her husband surviving her. On a bill filed by parties in interest to obtain a construction of the foregoing clause, it was HELD:

1st. That Mrs. Edie took only a life estate in the land devised to her.

2nd. That the Rule in *Shelley's Case* was not applicable.

The word "children" in its ordinary and popular signification, means immediate offspring, and such in general is its legal construction. It is a word of *purchase* and not of limitation, unless the context clearly shows it to be otherwise intended.

APPEAL from the Circuit Court for Cecil County, in Equity.

The bill of complaint in this case was filed on the 20th of December, 1878, by Frederick Stump and others. The case was submitted upon a statement of facts agreed upon by the parties. The object of the suit was to obtain from the Court the true construction of the clause in the will of John Jordan, wherein he devised certain real estate to his niece, Catharine J. Edie. It was admitted that the testator died in July, 1845, and that Catharine J. Edie departed this life about April, 1864, without ever having given birth to a living child; that Arthur J. Edie, the husband of the said Catharine, was still living; that during the life-time of the said Catharine she and her said husband, by deed duly executed and recorded, conveyed all their interest in the said real estate to George A. Garrett, one of the complainants, and that the title thus conveyed to George A. Garrett had been conveyed to the complainants, as set forth in the bill, by deeds properly executed and recorded, and that all the interest and estate of the said Catharine and Arthur, her husband, in said real estate under said will, was then vested in the complainants. It was also agreed that the parties who had appeared to the suit were the heirs, and only heirs-at-law, and "next kindred by law," of the testator. It was further agreed, that if the Court should be of opinion that Catharine J. Edie took no more than a life estate in said real estate under said will, that then the decree should be in favor of the defendants; and if they should be of opinion that under said will, the said Catharine J. Edie took an estate in fee-tail general, or any other estate greater than a life estate, that then the decree should be in favor of the complainants to the full extent of said greater estate, whatever it might be. The right to appeal was reserved.

The Court (ROBINSON and WICKES, J.,) to whom the case was submitted, being divided in opinion as to the construction of the testator's will, one of the Judges holding that under said will Catharine J. Edie took only a life

Stump, *et al. vs.* Jordan, *et al.*

estate in the real estate devised to her, and the other being
of opinion that she took an estate in fee-tail general in
said estate, which by the statute was converted into an
estate in fee simple, an order was passed dismissing the
bill. From this order the complainants appealed.

The cause was argued before BARTOL, C. J., MILLER,
ALVEY and IRVING, J., for the appellants, and submitted
on brief for the appellees.

*Henry W. Archer*, for the appellants.

By the fifth clause of the will of John Jordan, his
niece, Catharine J. Edie, by force of the rule in *Shelley's
Case*, took an estate in fee-tail, which, by operation of our
statute, was converted into an estate in fee simple, and by
the conveyances mentioned in the statement of facts,
became vested in the appellants, as set out in their bill of
complaint.

By a long series of decisions, the rule in *Shelley's Case*,
with its qualifications, had at the date of Jordan's will,
become the established law of Maryland ; with full know-
ledge of, and in accordance with which, all deeds and
wills conveying freehold estates, are in law, presumed to
be made, and cannot be changed or departed from with-
out great danger to the validity and stability of titles.
*Horne vs. Lyeth*, 4 *H. & J.*, 432, 433 ; *Ware vs. Richard-
son*, 3 *Md.*, 545.

So far as the intentions of the testator are concerned,
the established rules of construction furnish the only
legitimate guide for determining, in a lawful manner,
what such intentions really were, and although we are
required, for this purpose, to look at the whole will, we
must do so with reference to these established rules.

The language of the will in this case, clearly indicated
that the *general* intention of the testator was, that Catha-
rine J. Edie and *her* issue should have the land, as long

as she and *any of her issue* might continue to exist, making her the stock from which the title should pass from generation to generation. And whenever such general intention is apparent, the settled rules of construction require that the first taker shall be held to take an estate tail, although there may be an apparent particular intention that she should take for life only. *Chase vs. Lockerman,* 11 *G. & J.,* 206; *Hatton vs. Weems,* 12 *G. & J.,* 84, 107; *Simpers' Lessee vs. Simpers,* 15 *Md.,* 160; *Taylor vs. Watson, et al.,* 35 *Md.,* 519; *Robinson vs. Robinson,* 1 *Burrows,* 38; *Clarke vs. Smith,* 49 *Md.,* 118.

The words " her children," followed by the " in the event, however, of her death without lawful issue," were used in this will as words of limitation, and not as words of purchase. And this construction is strengthened, if not made imperative, by the fact admitted in the statement, that at the date of the will, and at the time of the testator's death, Catharine J. Edie had no children. *Robinson vs. Robinson,* 1 *Burrows,* 38, 50; 6 *Cruise's Digest, Title* 38, *ch.* 12, *sec.* 27; *Wood and Wife vs. Baron* 1 *East,* 259, 263; *Doe vs. Cooper,* 1 *East,* 230, 234; *Broadhurst vs. Morris,* 2 *Barn. & Adol.,* 1, 12; *Jones vs. Davies,* 4 *Barn. & Adol.,* 43, 53, 54; *Voller vs. Carter,* 82 *Eng. Com. Law,* 172, 179; *Parkman vs. Bowdoin, et al.,* 1 *Sumner, C. C. Rep.,* 359, 363, 367; *Nightingale vs. Burrell,* 15 *Pick.,* 104.

There are in this case no superadded words of limitation, by force of which the word " children," (explained to mean issue,) might be construed to be a word of purchase, and the children be made a new stock, from which the title should descend; but on the contrary, the manifest intention of the testator, as clearly indicated by the words " her children," and " her issue," was to make his niece, Catharine J. Edie, the parent stock. *Clarke vs. Smith,* 49 *Md.,* 115,117; *Simpers' Lessee vs. Simpers,* 15 *Md.,* 186-7.

The devise over to Arthur J. Edie, and the devise to the testator's next kindred by law living, both contingent

upon the event of the said Catharine J. Edie's dying "without lawful issue," are both too remote and void, because the contingency might not happen within the time prescribed by law. *Newton vs. Griffith,* 1 *H. & J.,* 111, 125, 126; *Tongue vs. Nutwell,* 13 *Md.,* 425.

The Act of 1825, ch. 119, has no application to this case, and never was intended to apply to any such case. The Act of 1825 was intended solely for the purpose of enlarging to a fee the estates of devisees, who, for want of words of inheritance, would, under the law, as it then stood, take only an estate for life. But it was never intended to give an estate in fee to devisees, who, but for that Act, would take no estate whatever under the will. Nor could it have been intended to authorize by construction the reduction of an estate tail under the law, as it then stood, to an estate for life only. *Code, Art.* 93, *sec.* 305.

*William Young* and *Henry D. Farnandis,* for the appellees.

In construing wills, the primary object is to reach the intention of the testator and to carry it into effect, if not in conflict with established legal rules. When forms of expressions, which have been judicially interpreted, are used by the testator, he is presumed to have employed them in their technical, however opposed to their ordinary, meaning, unless shown by the context to have been otherwise intended.

"The rule in *Shelley's Case,* with its qualifications, has been so often recognized and adopted by the Courts of this State that nothing but an Act of the Legislature can strike it out of our system of real law." *Shreve and Wife vs. Shreve,* 43 *Md.,* 394.

But the question here, as in that case, is, "does this will call into operation" that rule? We think not.

R. devised "to A. for life, and then to the heirs of his body," standing alone, would give to A. an estate tail, but

"the use of the words *heirs of his body*" has not under all circumstances. They are susceptible of explanation and qualification; and if the context plainly shows that they were not used in their ordinary sense, but were designed to indicate another class of objects less extensive, as sons, children, &c., they would be so construed as to effectuate the intention of the testator. *Simpers' Lessee vs. Simpers,* 15 *Md.,* 188.

If the clear expressions of the will show that the intention of the testator is in direct conflict with that ascribed to him by the rule in *Shelley's Case,* the Court will not apply the rule. *Chilton vs. Henderson,* 9 *Gill,* 438. "*Heirs of the body,*" which always give way with greater difficulty than the word "*issue*" have been in some instances construed words of purchase. *Shreve and Wife vs. Shreve,* 43 *Md.,* 396.

It is to be noted that the devise is not to "the heirs" *or heirs of the body,* and the cases show that the Courts have applied the rule more readily when the devise is to *the heirs* or *heirs of the body,* than where it is to the *issue* of the first taker. The latter is regarded as a term of equivocal import, being either a word of limitation or purchase, meaning heirs of the body or children, according to the intention of the testator, deduced from expressions in the will. *Shreve and Wife vs. Shreve,* 43 *Md.,* 395.

Courts more readily interpret "*issue*" as the synonym of "*children,*" and as a mere description of the persons to take, than they do "*heirs of the body.*" Issue is not *ex vi termini,* within the rule in *Shelley's Case. Timanus, et al. vs. Dugan, et al.,* 46 *Md.,* 416–17.

Courts, in construing wills, look to see if the testator has not "translated his own language," so as to exclude the rule in *Shelley's Case,* manifestly subversive in many cases of the real intentions of the testator. This intention, when clearly shown, in whatever way, will exclude the rule.

Since the Act of 1825, ch. 119, a devise to "children" without restrictive words, gives precisely the same estate, as if words of inheritance were added. The Act says in effect, that no such words are required to give an estate of inheritance, and if not legally required, their use can give no additional force, for the intention they would express, has been legally declared by the absence of restrictive words.

If the intent of the testator be really the controlling factor in construction, and he has by restrictive words shown, that he meant to give only a life estate to the mother, and by apt words has given a fee to her children, so showing that the estate of inheritance was intended to begin with them, it would seem to be an excessive refinement to say, that the omission of words which could not change the extent of estate given, would authorize by implication its destruction. The force of the Act of 1825, in excluding implication, is recognized in 43 *Md.*, 402.

The devise to the husband, for thirteen years, from Catharine's death, if she died without leaving issue or children living at the time of her death, whether good or bad, develops the same intent of the testator. If she had the fee, this devise to the husband was idle, and could not be gratified; if she had issue living at the time of her death, it was not to take effect, for the testator had given the fee to such issue, and did not mean to lessen their estate by even the short term, but if there was no issue living at her death, and the estate went over to his "next kindred by law," he interposed between their enjoyment and the wife's death, the user by her husband for thirteen years.

The "dying without issue" does not change the case. Whilst, as in the *Shreve Case*, the words "children" and "issue," are synonymous or convertible terms, no indefinite failure of issue is intended. The failure is fixed by the context at the time of her death.

The devise to the husband, if he survived her, and she died without issue, was for thirteen years from the death of the wife, and was to take effect from her death, at which time the failure must have occurred.   It took effect only on the failure of issue and only from the time of her death.    The definite failure at a particular time and on a particular event, is as precisely declared as by the words, " without issue living at the time of her death."

Can it be doubted that the testator, having a niece then married who had borne children, born dead, meant by his will to give *her only a life estate;* if at the time of her death she left living children or issue, he intended that they should have the land in fee and be the stock of succession; that if at the time of her death there were no such children or issue, then there being no special objects of his bounty in existence, the land was to go to his heirs-at-law or "next kindred," as a class having equal claims upon him?

We think that such intention is legally expressed in the will; that such interpretations does not conflict with established principles; that the rule in *Shelley's Case* is not here called into operation; and the expressed intentions of the testator are so clearly in conflict with those attributed by the rule, that the Court will not apply it, where its reason fails to defeat by implication the disposition of his property directed by the testator.

MILLER, J., delivered the opinion of the Court.

In the will of John Jordan, executed in June, 1844, and admitted to probate in July, 1845, there is the following clause:

" *Item.* 1 will and bequeath unto my niece, Catharine J. Edie, all that part of my real estate lying on the east side of the Elkton road, on which I now reside, adjoining the lands of Joseph Alexander, Jones Mathias and others, containing about ninety acres, more or less,

Stump, *et al. vs.* Jordan, *et al.*

to her the said Catharine J. Edie *during her natural life-time*, and at her death, I will and devise the said land to her *children if she have any;* in the event however of her death without *lawful issue*, I devise and bequeath the said land to my next kindred by law; I also direct that in the event of my said niece Catharine J. Edie's dying without lawful *issue*, then in that case her husband, Arthur J. Edie, (should he survive her,) shall have the free use and benefit of the land heretofore and above bequeathed to her, the said Catharine J. Edie, for the period of thirteen years, from the decease of his wife, the said Catharine J. Edie; provided, that the said Arthur J. Edie does not wantonly injure the said property during the period of thirteen years."

At the date of the will Mrs. Edie was a married woman, but had no children, and she died in April, 1864, without ever having had a child born alive, and left her husband surviving her, who is still living. The only subject of controversy in the present case is the construction of this clause of the will, and the question is, whether under it, Mrs. Edie took an estate tail which by our law is converted into a fee, or whether she took only a life estate.

In support of the position that she took an estate tail, the appellants' counsel contend that the rule in *Shelley's Case* must be applied. This Court has frequently, and especially in recent years, considered the application of this celebrated rule of property, which undoubtedly has become, and still remains a part of our system of real law. The cases in which it has thus been considered have all been cited in argument, and we shall not repeat here what we have so recently said on the subject. The definition of the rule as given by Mr. PRESTON, and approved by Chancellor KENT as the most full and accurate is this: "Where a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of re-

mainder, either with or without the interposition of another
estate, of an interest of the same legal or equitable quality,
to his heirs or heirs of his body, as a class of persons to
take in succession from generation to generation, the
limitation to the heirs entitles the ancestor to the whole
estate." Whether it prevails in a given case always
depends on the language the testator or grantor has
used, and we are all clearly of opinion it is not applicable
to the clause of the will now under consideration.

The devise after the life estate, is not to the "heirs," nor
to the "issue," but to the "*children*" of the life tenant,
if she have any. In its ordinary and popular signification
the word "children" means immediate offspring, and such
in general is its legal construction. It is a word of *pur-
chase* and not of *limitation*, unless the context clearly
shows it to be otherwise intended. The cases in which
it has a broader signification, and where it has been held
synonomous with "heirs" or "issue" or "descendants,"
are well illustrated by the resolutions in *Wild's Case*, 6
*Rep.*, 16. In that case, says Lord COKE, "it was resolved
for good law that if A. devises his lands to *B. and his
children* or issues, and he hath not any issue at the time
of the devise, the same is an estate-tail; for the intent of
the testator is manifest and certain that his children or
issues should take, and as immediate devisees they cannot
take because they are not *rerum natura*, and by way of
remainder they cannot take, for that was not his intent,
for the gift is immediate, therefore such words shall be
taken as words of limitation, *scilicet* as much as children
or issues of his body." In such a case there is no difficulty
in discovering the plain intent or in discerning the reason
why the word "children" should have the same effect as
the word "heirs." The distinction between the case put
and one like this, is clearly stated by the other resolu-
tion in the same case, which is this: "But it was resolved
that if a man, as in the case at bar, devises land to hus-

band and wife, and *after their decease* to their children or the remainder to their children, in this case although they have not any child at the time, yet every child which they shall have after, may take by way of remainder, according to the rule of law; for his intent appears that their children should not take immediately, but after the decease of the husband and wife." To the same effect are the cases cited by counsel of *Parkinson vs. Bowdoin,* 1 *Sumner,* 350; *Nightingale vs. Burrell,* 15 *Pick.,* 104, and *Broadhurst vs. Morris,* 2 *Barn. & Adol.,* 1.

If therefore the clause had stopped with the devise " to her children, if any she have," it is beyond doubt that in this State, since the Act of 1825, ch. 119, the mother would have taken a life estate, and any child or children she might have had, would have taken a remainder in fee. It is well settled that where a life estate is carved out with a gift over to the children of the life tenant, or the children of any other person, such gift will embrace not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution, and in cases falling under this rule, the children, if any, living at the death of the testator, take an immediately vested interest in their shares, subject to the diminution of those shares, (*i. e.* to their being divested *pro tanto*) as the number of objects is augmented by future births during the life of the tenant for life, and consequently on the death of any of the children during the life of the tenant for life, their shares, (if their interests therein are transmissible,) devolve to their respective representatives. 2 *Jarman on Wills,* (5*th Amer. Ed.,*) 704, 707.

But it is contended that the succeeding words, " in the event, however, of her death without lawful *issue*, I give and bequeath the said land to my next kindred by law," have the effect to enlarge the meaning of the word " children " previously used, from a word of *purchase* to a word

of *limitation,* and, therefore, to give to the first taker an estate tail; that the words "dying without lawful *issue,*" used in this devise over, indicate a general intent which must prevail over any particular intent, to give the land to his niece and to her issue, as long as she or any of her issue might continue to exist, thus making her the stock from which the title should pass from generation to generation. But to this we cannot yield our assent. In the devise after the life estate the testator has used the most appropriate word, and the one usually adopted in order to avoid the operation of the rule in *Shelley's Case,* and to enable the children to take as purchasers, and prevent the ancestor from depriving them of the estate by alienation. This is followed by a devise over to his "next kindred by law" in case his niece should die without "lawful issue." Here again, he avoids using the words, "heirs" or "heirs of her body," and adopts the term "issue," a word which, as we have said in *Shreve vs. Shreve,* 43 *Md.,* 382, and *Timanus vs. Dugan,* 46 *Md.,* 402, may be employed either as a word of purchase or of limitation, as will best effectuate the testator's intention, a word which is much more flexible than the words "heirs of the body," and which the Courts more readily interpret as the synonym of children, and as a mere description of the person or persons to take, a word which is not *ex vi termini* within the rule in *Shelley's Case,* and which is dependent upon the context as to whether it will give an estate tail to the ancestor. Here we think it clear, the testator used and intended to use it as having the same meaning as children. In giving to the surviving husband the use and benefit of the land for thirteen years he uses the same words, and gives it only in case the wife should die "without lawful issue." This, it must be observed, is not an interest created or arising intermediate the devise for life to the niece and the devise in remainder to her children, but takes effect only in case the

devise to the children should fail by reason of there being none living at the death of the niece to take, and in that event it is interposed between the wife's death and the enjoyment of the property by the next of kin. We find nothing in either or both of these devises over, which induces us to suppose the testator had a general intent requiring a sacrifice of the particular intent, or an enlargement of the estate for life given to the niece into an estate of inheritance, or the wresting of the word " children " from its popular and ordinary legal signification of a word of *purchase* to a word of *limitation.* As said in 2 *Wash. on Real Prop.*, (*4th Ed.*,) 603, the recent cases show that the words " 'child or children,' are in their usual sense words of *purchase*, and are always so regarded, unless the testator has unmistakably used them as descriptive of the extent of the estate given, and not to designate the donees." We find nothing in the will manifesting a general and main intent that the *remote descendants* of his niece should take the land in preference to the testator's heirs-at-law. It seems to us plain that this uncle meant by his will to give to his niece a life estate only in this land, and if at the time of her death she left living children they should have it in fee, and be the stock of succession, but if at the time of her death there were no such children, then there being no special objects of his bounty in existence, the land was to go, after user thereof for thirteen years by the surviving husband, to his heirs-at-law, or, as he expresses it, his " next kindred by law, as a class having equal claims upon him.

We have carefully examined all the cases referred to by the appellants' counsel, and in the very able opinion of one of the Judges of the Circuit Court, besides many others, and find in all of them where the first taker was held to have taken an estate tail, that the words used are different—and, in most of them, widely different—from those in the present will. In *Cock vs. Cooper*, 1 *East*, 229,

the devise, after the life estate, was to the lawful *issue* of the first taker as tenants in common, and the devise over was after his dying without lawful *issue.* The word "children" was nowhere used in the will. In *Wood and Wife vs. Baron,* 1 *East,* 259, the testator, after giving a life estate therein to his wife, devised his whole estate, real and personal, to his daughter Ann, "who shall hold and enjoy the same as a place of *inheritance* to her and her *children,* or her *issue forever;* and if it should happen that my daughter Ann should die leaving no child or children, *or* if it so happen my daughter Ann's *children* should die without *issue,*" then over. The Court of King's Bench was of opinion, and so certified, that, under the terms of this will, the daughter took an estate tail, and Lord KENYON remarked that it was a case in which "one spells, as it were, every word in order to get at the real intention of the testator." The difference between that case and this is so obvious as not to need comment. In *Jones vs. Davies,* 4 *Barn. & Adol.,* 43, the will was very complicated and unskilfully drawn. The Court, however, placed much reliance upon the fact that the testator, in the preface to the devise, had declared his intent that, in case his "daughter should die unmarried," "his small estate should not be frittered away, but should be *entailed.*" PARKE, J., said it was "one of those cases where the will had apparently been drawn by the testator himself, and was one of those unfortunate instances of a person wishing to tie up his estate with limitations and upon contingencies, without knowing what language to use for the purpose." He held that the paramount intent, which was plain and manifest upon the face of the will, could not be gratified without giving to the daughter an estate tail, and he thought the language of the will would justify such a construction. In *Voller vs. Carter,* 82 *Eng. C. L. Rep.,* 172, there was another very peculiar will. The testator devised two freehold houses to his niece E.

"for her life only," and "should she marry and have *issue*, then to go to her *children*, or if she have no *issue*, then to. go to" her nephew, and "should he have no *issue*, then to go to" another niece; "and furthermore, it is my desire that the freehold shall never be sold or mortgaged, but shall remain independent of any husband in some branch of my family." It was held the niece E. took an estate tail. The ground of the decision, as shortly stated by Lord CAMPBELL, was that the devisor *first* says "*issue*," then "*children*," then "no issue," and that this clearly shows that he used "children" as synonymous with, and to designate "issue."

But the case of *Hatton vs. Weems*, 12 *G. & J.*, 83, has been relied on as conclusively showing that Mrs. Edie took an estate tail, and as this is a decision of our predecessors, a more extended examination of it is required. In that case the testator devised an equitable estate in land to his daughter Mary "during her natural life, and after her death to her *children* lawfully begotten, but if she should die without lawful issue *to heir* the above mentioned land, then and in that case," he devised the same to his son Henry in fee. This son was made trustee of the land for his sister, and certain named negroes and their increase, and certain stock, plantation utensils and other personal property, were also devised to him upon the same trusts. After the death of the testator his daughter married Mr. Weems, and she and her husband filed a bill against Henry, the trustee, for an account of the trust property, charging him with misconduct in the management thereof, and praying for his removal from the trust and the delivery up of the whole trust estate. Pending the suit Mrs. Weems died leaving *issue, an only daughter*, who also subsequently died, and this is a most important fact to be noticed. The Chancellor decided that the suit had abated by the death of Mrs. Weems, and ordered the cause to stand over with leave to file a supplemental bill

of revivor.   Mr. Weems, the surviving husband, who had
also become administrator of the estate of his *deceased
daughter*, then filed the bill of revivor and prosecuted the
suit.   The controversy in the case upon the merits was
mainly over the accounts.   Counsel for Hatton set up no
claim to the real estate nor to any part of the personal
property except the negro slaves.   Mr. Alexander, his
counsel, in arguing the case in the Court of Appeals said
"the title to the personal property *alone* is in question in
this suit," and he conceded "that the limitation over to
the appellant (Hatton) was dependent on an estate in tail
previously given to Mary, the appellee's late wife, *or to
her children*, and it is immaterial to determine *in whom*
such estate vested."   He likewise conceded that the limi-
tation over of the personal property other than the negroes
was void, but insisted that Hatton as ultimate legatee was
entitled to *them* under the decision in the case of *Biscoe
vs. Biscoe,* 6 *G. & J.*, 232.   Mr. John Johnson, who ar-
gued the case for Weems, the successful party, contended
that the limitation over of both the real and personal
estate was void, but said that even if that limitation was
good, still as Mrs. Weems "*did leave lawful issue,* living
at the time of her death, the contingency upon which the
limitation to the defendant was to take effect *did not hap-
pen,* and consequently he had no title to the property."
And Mr. McMahon, who also argued on the same success-
ful side, admitted that "the estate which Mrs. Weems
took under her father's will *was not an estate tail by impli-
cation;* it was an estate *for life,* remainder to her child in
fee, and if she dies without child then a remainder over
by way of executory devise, and this disposes of the whole
case, as all limitations over are defeated by the birth of
her child."   It thus appears that the eminent and leading
counsel for the complainant, in whose favor the case was
ultimately decided, did not contend or ask the Court to
decide in the interest of his client, that Mrs. Weems took

an equitable estate tail in the land, but on the contrary admitted she took but a life estate. But what is the decision itself, and how is it expressed? It is simply in these few words: "We differ from the Chancellor in his construction of the will of Henry Hatton and believe that by its true construction Mrs. Weems took an equitable estate tail, which in this State is converted into an estate in fee in the lands devised to her, and that in the personal property she took an absolute estate, and that the limitation over to Henry, being after an indefinite failure of issue, is void." No reasons are assigned, and no authorities are cited in support of the construction that Mrs. Weems took an equitable estate tail in the land, and we are left te conjecture on what grounds this construction proceeded. Such a decision can, of course, be received as a binding authority only in a case where the *same* or *substantially the same* words are used. But in our opinion there is a substantial difference between the language of Hatton's will and that used in this case. In the former, the terms of the devise over are "in case she should die without lawful issue *to heir* the above mentioned land." These are the exact words of the will as set out in the original record in the case which we have examined, and they are the words used in the manuscript opinion of Judge AR-CHER. which we have also examined. There is therefore a misprint in the opinion as reported (12 *G. & J.*, 108,) of "to have" instead of "to heir." The Court may have considered this language as plainly indicating the testator's intention to let her children or issue take as *heirs* of his daughter. In the absence of any intimation to the contrary it is not unreasonable to suppose the decision was rested upon the force of the words "issue *to heir*" the estate, and there are no such words in the will now before us. We cannot therefore accept the decision in *Hatton vs. Weems* as controlling the present case.

As we have already said we are all clearly of opinion that under this will Mrs. Edie took but a life estate in

this land, and as that is the only question, which by the agreed statement of facts, is submitted for our decision, it follows that the decree appealed from must be affirmed.

*Decree affirmed.*

(Decided 21st October, 1880.)