# RAYMOND S. WILLIAMS, Trustee,

## *vs.*

# J. C. ARMIGER AND BROTHER.

*Deeds: construction.   Rule in Shelley's Case.   "Heirs," "children": when words of purchase; vested estates; liable to open or divest to let in other children.*

Under the Rule in Shelley's Case, the construction given to the words "heirs" or "heirs of the body" imputes to the grantor an intention to use them in their legal sense, and they are regarded as conclusive evidence of the intent of the grantor notwithstanding it may be contrary to the real intention.     p. 226

While the word "heirs," in the absence of some qualifying expression annexed to it, is under the rule treated as a word of limitation, the word "children" also has a well recognized meaning, and unless the context clearly shows it to be otherwise intended, it signifies immediate offspring, and is a word of purchase and not a word of limitation.               p. 227

One of the exceptions is that where the grantor or testator annexes to the word "heirs" other words indicating that he intended to use the term in a qualified sense, as a designation of certain individuals, and that *they* and not the ancestor were to be the points or *termini* from which the succession to the estate was to take its start, then the word "heir" is to be treated as a word of purchase.                      p. 226

A deed of trust provided that after the death of Mrs. M. W. J. the property was to be held in trust "for all and every the children the said M. W. J. now has or the children she may hereafter have, * * * the issue of any deceased child of said M. W. J., if any such issue there should be, to take the part or proportion only to which the parent of such issue if living would be entitled"; nothing in the context suggested that the

grantor intended the words "child or children" to have any other than their ordinary meaning: *Held,* that to treat these words as words of limitation would be contrary to the manifest purpose of the grantor, which was to convey to Mrs. J. only a life estate in the property, and the remainder to her children and their issue.                                     p. 229

It was also further *Held,* that since by this construction of the deed it was impossible to ascertain with certainty the persons who would be entitled to take the property at the death of Mrs. J., and that while the deed of Mrs. J. and her children then living would operate to transfer the interest and estate of the children who united therein provided they survived their mother or died during her lifetime without leaving issue, it could not affect the interest or share of any child who should die during the lifetime of Mrs. J., the life tenant, *leaving issue.*
                                            pp. 233-234

It was further, *Held,* that the words "now has" showed that the grantor intended each of the children of Mrs. J. living at the time the deed was executed and delivered to take a vested remainder, subject to be divested only by his or her death, leaving issue, during the lifetime of Mrs. J., and that the words "from and after" referred merely to the time of enjoyment of the estate.                                     p. 233

With this construction of the deed it is imposible to ascertain with certainty the persons who will be entitled to take the property at the death of Mrs. J., and while the deed in question operated to transfer the interest and estate of the children who united therein provided they survive their mother or die during her lifetime without leaving issue, it can not affect the interest or share of any child who may die during the lifetime of Mrs. J., the life tenant, *leaving issue.*          pp. 233-234

*Decided June 23rd, 1916.*

Appeal from the Circuit Court for Anne Arundel County. In Equity. (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

224          WILLIAMS vs. ARMIGER.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Urner, Stockbridge and Constable, JJ.

*James M. Mullen* (with whom was *Raymond S. Williams* on the brief), for the appellant.

*James M. Munroe,* for the appellees.

Thomas, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Anne Arundel County sustaining an exception to a sale of a parcel of land in that county made by the appellant, Raymond S. Williams, trustee under a deed of trust for the benefit of creditors from Charles L. Solley. The exception was filed by the appellees, Josiah C. Armiger and James S. Armiger, co-partners, trading as J. C. Armiger and Brother, who purchased the property from the appellant at a public sale, and is based upon an alleged defect in the title of Charles L. Solley, who claims under two deeds, one dated September 3rd, 1896, and the other dated the 4th of October, 1909.

By the first of these deeds Sarah Ann Solley, "in consideration of natural love and affection and the sum of five dollars," granted and conveyed the property therein described and containing about one hundred and fourteen acres of land to George H. Solley, "his heirs and assigns, * * * in trust for the sole and separate use and benefit of Mary W. Johnson, wife of William C. Johnson, for and during the period of her natural life and no longer, so that she, during the period of her natural life, may be permitted and suffered to have, hold, use, occupy and possess the aforesaid parcel of ground with all the rights, appurtenances and rents, issues and profits thereof to receive, take and apply to her separate use and benefit, her receipts alone being good and sufficient acquittances and discharges for all such rents, issues and

profits; so that the said parcel of ground shall not at any time or in any manner be liable for any debts of her present or any future husband, and from and after the death of the said Mary W. Johnson, then in trust for all and every the children the said Mary W. Johnson now has or the child or children she may hereafter have, and their executors, administrators and assigns, as tenants in common equally, the issue of any deceased child of said Mary W. Johnson, if any such issue there should be, to take the part or proportion only to which the parent of such issue if living would be entitled."

By the second deed Mary W. Johnson and William C. Johnson, her husband, Stella S. Thornton and Arthur Thornton, her husband, James A. Johnson and Emma Johnson, his wife, George W. Johnson and Annie M. Johnson, his wife, Harry M. Johnson and Amanda R. Johnson, his wife, conveyed "all their right, title, interest and estate in and to" said parcel of land to Charles L. Solley, who, on the 16th of October, 1914, conveyed it to the appellant, in trust for the benefit of his creditors.

It appears from the agreed statement of facts that Mary W. Johnson, who at the date of the sale made by the appellant was a widow and sixty-eight years of age, "had only five children," viz: Stella S. Thornton, James A. Johnson, Harry M. Johnson, George W. Johnson "and a deceased child who died in infancy, unmarried and without issue"; that Stella S. Thornton died "leaving no children"; "that there are no other children of Mary W. Johnson, * * * nor descendants of any deceased child of Mary W. Johnson," and that George H. Solley died in April, 1914, leaving heirs, all of whom are "now of full age and reside in the State of Maryland."

The appellant contends that the deed from Sarah Ann Solley, under the Rule in Shelley's Case and the Statute of Uses, conveyed to Mary W. Johnson the legal estate in fee simple, and that the deed from Mary W. Johnson and others operated to vest the same title in Charles L. Solley, while the contention of the appellees is that the deed from Sarah Ann Solley conveyed to the trustee the legal title, and to

Mary M. Johnson only an equitable life estate, with contingent remainders to her children.

The rule relied on by the appellant (which has been abrogated by the Act of 1912, Ch. 144, as to instruments executed after the 31st of May of that year) is, "that when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately, to his heirs, in fee or in tail, *the heirs* are words of limitation of the estate, and not words of purchase." Or as stated in *Preston on Estates* and adopted by CHANCELLOR KENT, "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

The construction given to the words "heirs" or "heirs of the body" imputes to the grantor an intention to use them in their legal sense, and they are regarded as conclusive evidence of the intent of the grantor notwithstanding it may be contrary to the real intention. One of the exceptions to this rule is that where the grantor or testator annexes to the word "heirs" other words indicating that he intended to use the term in a qualified sense, as a designation of certain individuals, and that *they* and not the ancestor were to be the points or *termini* from which the succession to the estate was to take its start, then the word "heir" is to be treated as a word of purchase. For instance it is said that the words "heirs now living," "children," "issues," etc., are words of limitation or purchase according to the manifest intention of the grantor. *Ware* v. *Richardson,* 3 Md. 505; *Handy* v. *McKim,* 64 Md. 560.

While the word *heirs,* in the absence of some qualifying
expression annexed to it, is under the rule treated as a word
of limitation, the word *"children"* also has a well-recognized
meaning, and unless the context clearly shows it to be other-
wise intended, it signifies immediate offspring, and is a word
of *purchase* and not a word of *limitation. Stump* v. *Jordan,*
54 Md. 619; *Reilly* v. *Bristow,* 105 Md. 326.

In *Stump* v. *Jordan, supra,* JUDGE MILLER said: "The
devise after the life estate, is not to the 'heirs,' nor to the
'issue,' but to the 'children' of the life tenant, if she have
any.   In its ordinary and popular signification the word
'children' means immediate offspring, and such in general is
its legal construction.   It is a word of *purchase* and not of
*limitation,* unless the context clearly shows it to be otherwise
intended.   The cases in which it has a broader signification,
and where it has been held synonymous with 'heirs' or 'issue'
or 'descendants,' are well illustrated by the resolutions in
*Wild's Case,* 6 Co. 17.   In that case, says LORD COKE, 'it
was resolved for good law that if A. devises his lands to B.
*and his children* or issues, and he hath not any issue at the
time of the devise, the same is an estate-tail; for the intent
of the testator is manifest and certain that his children or
issue should take, and as immediate devisees they can not
take because they are not *rerum natura,* and by way of
remainder they can not take, for that was not his intent, for
the gift is immediate, therefore such words shall be taken as
words of limitation, *scilicet* as much as children or issue of
his body.'   In such a case there is no difficulty in discovering
the plain intent or discerning the reason why the word 'chil-
dren' should have the same effect as the word 'heirs.'   The
distinction between the case put and one like this, is clearly
stated by the other resolution in the same case, which is this:
'But it was resolved that if a man, as in the case at bar,
devises land to husband and wife, and after their decease to
their children or the remainder to their children, in this case
although they have not any child at the time, yet every child

which they shall have after, may take by way of remainder,
according to the rule of law; for his intent appears that their
children should not take immediately, but after the decease
of the husband and wife.'" After referring to the argument
that the succeeding words of the testator, "in the event, how-
ever, of her death without lawful issue, I give and bequeath
the said land to my next kindred by law," had the effect of
enlarging the meaning of the word "children" previously
used, from a word of *purchase* to a word of limitation, and,
therefore to give the first taker an estate tail, JUDGE MILLER
said further: "But to this we cannot yield our assent. In
the devise after the life estate the testator has used the most
appropriate word, and the one usually adopted in order to
avoid the operation of the rule in *Shelley's Case,* and to
enable the children to take as purchasers, and prevent the
ancestor from depriving them of the estate by alienation."
In the case of. *Reilly* v. *Bristow, supra,* the limitation over
was in the following words: "To go and be divided between
the children the lawful heirs of my aforesaid children."
After referring to the argument of the appellees' counsel
that the words lawful heirs explained and enlarged the pre-
ceding word, children, JUDGE PEARCE said: "Where, as here,
there are two possible constructions, one of which would
enlarge and the other would restrict the meaning of the word
*children,* we think the spirit of our decisions requires us to
adopt the restrictive construction which will give effect to
the natural and primary meaning of the word, rather than
the arbitrary meaning placed upon it by an artificial rule of
law." In the case of *Hall* v. *Gradwohl,* 113 Md. 293, where
the will provided that after the death of the life tenant the
property should be equally divided "among her children or
heirs" the Court held that the words "children or heirs" were
words of purchase, and JUDGE BURKE, referring to the con-
tention that the rule in *Shelley's Case* applied, said: "By
that construction her 'children or legal heirs' would take
nothing under the will, and the whole portion which the tes-

tator intended his daughter to take for life would be taken by her absolutely. Such a construction, which has neither reason, policy, justice, nor equity to support it, can only be sustained by giving the words 'legal heirs,' which are superadded to the word children, the arbitrary meaning placed upon them 'by an artificial rule of law.' "

In the case at bar the deed provides that after the death of Mrs. Johnson the property is to be held in trust "for all and every the children the said Mary W. Johnson now has or the children she may hereafter have, * * * the issue of any deceased child of said Mary W. Johnson, if any such issue there should be, to take the part or proportion only to which the parent of such issue if living would be entitled." Here the word *heirs* is not used, and there is nothing in the context to suggest that the grantor intended the words "child or children" to have any other than their ordinary meaning. To treat these words as words of limitation would be contrary to the manifest purpose of the grantor to convey to Mrs. Johnson only a life estate in the property, and the remainder to her children and their issue.

The case of *Cook* v. *Councilman,* 109 Md. 622, on which the appellant relies, is very different. There the limitation over in default of children was to the heirs of the devisee of the life estate, and JUDGE BRISCOE said: "But in the case of the devise we are now considering the word 'heirs' is used as well as the word 'children,' and that word is strictly a word of limitation. The ultimate gift over to the heirs of Councilman in default of children indicates a general intent that the estate should descend to his heirs and operates to enlarge the effect of the word 'children' antecedently used." As we have said, the deed in this case contains no words that can operate to enlarge the effect of the word 'children.' On the contrary, the terms employed are those usually adopted to avoid the rule in *Shelley's Case,* and to enable the children of the life tenant to take the remainder as *purchasers.* The intent to make *them,* and not their mother, "the root of succession from which future takers should come" is clear, and there

is no rule of law or of construction that can deprive them of the estate. In this view of the case it is not necessary to determine whether the life estate of Mrs. Johnson was converted by the Statute of Uses unto a legal estate, or whether the rule enforced in *Handy* v. *McKim, supra,* still applies in this State.

Having determined that Mrs. Johnson has only a life estate in the property, the next question to be considered is, Did her children by uniting in the deed convey to Charles L. Solley the remainder in fee simple?

In the case of *Stump* v. *Jordan, supra,* where the property was devised to Catherine J. Edie for life, and "at her death * * * to her children if she have any," JUDGE MILLER said: "If therefore the clause had stopped with the devise 'to her children, if any she have,' it is beyond doubt that in this State, since the Act of 1825, Ch. 119, the mother would have taken a life estate, and any child or children she might have had, would have taken a remainder in fee. It is well settled that where a life estate is carved out with a gift over to the children of the life tenant, or the children of any other person, such gift will embrace not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution, and in cases falling under this rule, the children, if any, living at the death of the testator, take an immediately vested interest in their shares, subject to the diminution of those shares (*i. e.,* to their being divested *pro tanto*) as the number of objects is augmented by future births during the life of the tenant for life, and consequently on the death of any of the children during the life of the tenant for life, their shares, (if their interests therein are transmissible) devolve to their respective representatives." In the case of *Cox* v. *Handy,* 78 Md. 108, the testator devised certain property to his wife for life and directed that after her death it should be divided "amongst my children, share and share alike, the child or children of any deceased child to take the portion to which the parent, if living, would have been entitled," and

JUDGE BRYAN, after stating that it was "settled that where a particular estate is given, and there is a gift over to children, this gift will embrace the children living at the death of the testator, and all who may subsequently come into existence before the period of distribution," and after reviewing many decisions bearing upon the question, said: "In view of these authorities, we think that we are justified in holding that a share of the property vested in each of the children of William W. Handy (the testator) who survived him, but if any such child should leave children at his death his share was divested in favor of his children; and that it was not divested by the death of the child in the lifetime of the tenant for life without leaving children. * * * In *Engel's Case* (*Engel* v. *State, use of Geiger,* 65 Md. 539,) the Court said that it was unmistakably clear that the testator intended to substitute the child of the legatee who might die, in the place of the parent." In disposing of a motion for reargument JUDGE BRYAN said further: "A share of the property vested in each of the children who were living at the time of his (testator's) death, and if any child died before the period of distribution leaving children, they were *substituted* in his place; his share, however, was not divested if he left no children, but it went to his representatives." In that case the Court also held that the children of a child who died before the testator took their parent's share. The statements of JUDGE BRYAN were quoted with approval in the case of *Hoover* v. *Smith,* 96 Md. 393. In the case of *In re Roger's Trust Estate,* 97 Md. 675, the will directed the executor to convert the entire estate into money, and after paying debts, etc., to transfer what remained to a trustee to invest the same and pay the interest thereon to the testator's wife during her life, and after her death to divide the securities and interest amongst the testator's children, and provided that "in said division, the child or children of a deceased parent, if there be such, are to take in equal proportion, the share to which that deceased parent would have been entitled had he or she lived at the time of said division." The widow of

the testator released all her interest in the trust fund, and
his children filed a bill to procure a division of the fund on
the ground that in consequence of the release an acceleration
of the remainder had resulted, and that they were entitled
to a division of the trust estate. This Court, in affirming
the decree of the lower Court dismissing the bill, said: "By
the terms of the will, it seems to be clear that his children
took vested interests in the estate in equal proportions de-
feasible as to the share of any one of them upon his or her
death in the lifetime of the widow; and in this event the
share of the person so dying would become vested in his or
her children. *Cox v. Handy,* 78 Md. 108. The period at
which the division among the remaindermen is to take place
as fixed by the will, is after the death of Mrs. Rogers; and
if at that time, one of the children is deceased leaving a
child or children then living, such child or children must be
substituted in his place; but if the child so dying leaves no
children, his share is not divested but goes to his personal
representatives. *Cox v. Handy,* 78 Md. 125. We do not
understand that the appellants by their counsel, dispute these
conclusions. With this construction of the will it is impossi-
ble to ascertain with precision the person or persons who will
be entitled to take at the period of the death of Mrs. Rogers
the life tenant. That event is yet in the future, and it is not
possible to determine who may be entitled when it shall ar-
rive. The testator desired that his estate should pass to all
his children share and share alike, but if any one of them is
deceased at the period of his wife's death, the children or
child of such deceased child shall take; and if there be no
such child or children, inasmuch as the estate vested in the
deceased child would not become divested by death, his share
would go to his legal representatives. So that, it seems clear
that if the estate be divided at the present time while Mrs.
Rogers is still living the result might ensue that the several
portions of the estate will finally become vested in persons
other than those contemplated by the testator, and in direct
contravention of his will."

Now the deed in question provides that "from and after" the death of Mrs. Johnson the property is to be held in trust "for all and every the children" she "now has or the child or children she may hereafter have, * * * the issue of any deceased child * * * if any such issue there should be, to take the part or proportion only to which the parent of such issue if living would be entitled," and unless the words "from and after" show that the grantor intended to postpone the vesting of the remainder until the death of Mrs. Johnson, the case falls clearly within the rule referred to, and upon the execution and delivery of the deed, each of the children of Mrs. Johnson then living took a vested interest in the property. The share of each child was liable to be diminished in order to include any child Mrs. Johnson might thereafter have, and the interest of each child was subject to be divested only by his or her death, during the lifetime of Mrs. Johnson, leaving issue, who by the terms of the grant, take the share "to which the parent of such issue if living would be entitled."

There are cases holding that words like the words "from and immediately after" the death of the life tenant express the intention of the testator or grantor to defer the vesting of the remainder until that period. *Larmour* v. *Rich,* 71 Md. 369; *Poultney* v. *Tiffany,* 112 Md. 630. But here the words "from and after" are followed by an express grant to the children Mrs. Johnson *"now has,"* which show that the grantor intended each of the children of Mrs. Johnson living at the time the deed was executed and delivered to take a *vested remainder,* subject to be *divested* only by his or her death, leaving issue, during the lifetime of Mrs. Johnson, and that the words "from and after" refer merely to the time of *enjoyment* of the estate.

With this construction of the deed it is impossible to ascertain with certainty the persons who will be entitled to take the property at the death of Mrs. Johnson, and while the deed in question operated to transfer the interest and estate

of the children who united therein provided they survive their mother or die during her lifetime without leaving issue, it cannot effect the interest or share of any child who may die during the lifetime of Mrs. Johnson, the life tenant, *leaving issue.*

The deed in this case does not differ in any material respect from the deeds construed in *Ware* v. *Richardson,. supra,* and *Handy* v. *McKim, supra,* and following the ruling in those cases, the remaindermen in the case at bar, by force of the Statute of Uses, take *legal estates.* See also *Merritt* v. *Disney,* 48 Md. 344; *Hooper* v., *Felgner,* 80 Md. 262; *Graham* v. *Whitridge,* 99 Md. 248, and 39 *Cyc.* 219.

The agreed statement of facts does not state *when* the child referred to as "a deceased child who died in infancy, without issue," died. If said child died *after* the deed from Mrs. Johnson and others was executed, his or her interest in the property did not pass by that deed, but vested in his or her heirs at law.

In addition to the defects pointed out, the title of Charles L. Solley and his assignee is subject to the further uncertainty, referred to by the Court below, arising out of the fact that Mrs. Johnson is still living. The Court cannot say that she will not have other children to take vested interests in the property. *In re Ricard's Trust Estate,* 97 Md. 608.

For the reasons stated the decree of the Court below sustaining the exception to the sale made by the appellant must be affirmed.

*Decree affirmed, with costs to the appellees.*